HOLLY DEVELOPMENT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 99618. Promulgated April 3, 1941.

*Bayley Kohlmeier, Esq.*, for the petitioner.
*E. A. Tonjes, Esq.*, for the respondent.

OPINION.

BLACK: The Commissioner has determined a deficiency of $2,103.76 in petitioner's income tax liability for the year 1935. The deficiency is due to certain adjustments made by the Commissioner in petitioner's income tax return for 1935 as follows:

Unallowable deductions:
| | | |
|---|---|---|
| (a) Depletion | | $13, 745. 49 |
| (b) Depreciation | | 1, 554. 55 |
| Total | | 15, 300. 04 |

The petitioner does not contest adjustment (b). By an appropriate assignment of error petitioner does contest adjustment (a).

Thus there is presented for our decision only one issue, namely, whether the respondent erred in deducting $23,667.03 interest paid by petitioner during the year 1935 on Federal income tax deficiencies for seven prior years as a part of petitioner's overhead expense in determining the net income from petitioner's oil properties for the purpose of computing the deduction allowable for depletion for the year 1935 under the provisions of section 114 (b) (3) of the Revenue Act of 1934. This section is as follows:

(3) PERCENTAGE DEPLETION FOR OIL AND GAS WELLS.—In the case of oil and gas wells the allowance for depletion under section 23 (m) shall be 27½ per centum of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. *Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property*, except that in no case shall the depletion allowance under section 23 (m) be less than it would be if computed without reference to this paragraph.    [Italics supplied.]

In computing the "net income of the taxpayer * * * from the property" the respondent deducted from the gross income from the property the $23,667.03 interest paid on income tax deficiencies for prior years. Petitioner contends that no part of the interest should have been so deducted.

The facts were stipulated. We adopt the stipulation as our findings of fact and set forth herein only those facts which are necessary to an understanding of the issue involved.

Petitioner is a corporation, with its principal office at Huntington Beach, California. It is engaged principally in the business of producing and selling oil and other petroleum products. Its income tax return for the taxable year 1935 was filed with the collector of internal revenue for the sixth district of California.

During the year 1935 petitioner paid additional income taxes for the years 1925, 1926, 1927, 1930, 1931, 1932, and 1933. At the time these

additional taxes were paid, petitioner paid interest thereon in the total amount of $23,667.03.

During the year 1935 petitioner operated five oil properties, known as the Turley lease, Harvey lease, De Francis lease, Barnett lease, and Miller lease, and derived a total gross income of $101,404.23 from the production and sale of oil and gas from these properties. It also received income from other sources as follows:

| | | | |
|---|---|---|---|
| Interest | $1,529.07 | Dividends | $125.00 |
| Rents | 600.00 | Tax exempt interest | 3,002.44 |
| Sales of securities | 6,240.00 | Sale of miscellaneous items | 2,205.24 |

On December 31, 1927, petitioner carried on its books of account an account designated reserve for Federal income taxes. Certain amounts were added to this account from 1928 to 1934, inclusive. The additional taxes for prior years and the $23,667.03 interest thereon paid by petitioner during the year 1935 were charged against this reserve account.

In its income tax return for the year 1935 petitioner took a deduction for depletion of its oil properties in the total amount of $26,813.29. The respondent in determining the deficiency disallowed $13,745.49 of the amount deducted and in explanation thereof said:

(a) Depletion of $26,813.29 deducted in the return has been reduced to $13,067.80, in accordance with the provisions of Section 114 (b) (3), Revenue Act of 1934.

Petitioner now contends that the correct deduction for depletion of its oil properties for the year 1935 is the toal amount of $24,372.45 instead of $26,813.29 as originally claimed and instead of $13,067.80 as allowed by the respondent. If the above mentioned interest in the amount of $23,667.03 should be deducted from the gross income from the properties in determining the "net income of the taxpayer * * * from the property", then the respondent's determination must be sustained; and if the interest should *not* be so deducted, then the correct allowance for depletion is the amount of $24,372.45, as contended for by petitioner.

Section 114 (b) (3) of the Revenue Act of 1934, as far as the above italicized portion is concerned, is identically the same as section 114 (b) (3) of the Revenue Act of 1928, which was involved in *Helvering* v. *Wilshire Oil Co.*, 308 U. S. 90. The question in that case was whether the Wilshire Oil Co. in computing its net income for 1929 and 1930 for the purpose of applying the 50 percent limitation on depletion allowable under section 114 (b) (3) of the Revenue Act of 1928, was required to deduct certain development expenditures where it had deducted those expenditures in computing its taxable net income. The Supreme Court, in holding that the development expenditures there involved must be deducted in computing

the "net income of the taxpayer * * * from the property", laid special emphasis on the power of the Commissioner to promulgate regulations relative to the computation of the depletion allowance. It held valid the regulations promulgated under the 1928 Act, which regulations in so far as the present question is concerned, are substantially the same as the regulations promulgated under the 1934 Act. Article 23 (m)–1 of the latter regulations provides:

(h) "Net income of the taxpayer (computed without allowance for depletion) from the property," as used in section 114 (b) (2), (3), and (4) and articles 23 (m)–1 to 23 (m)–28, inclusive, means the "gross income from the property" as defined in paragraph (g) less the allowable deductions attributable to the mineral property upon which the depletion is claimed and the allowable deductions attributable to the processes listed in paragraph (g) in so far as they relate to the product of such property, including overhead and operating expenses, development costs properly charged to expense, depreciation, taxes, losses sustained, etc., but excluding any allowance for depletion. Deductions not directly attributable to particular properties or processes shall be fairly allocated. To illustrate: In cases where the taxpayer engages in activities in addition to mineral extraction and to the processes listed in paragraph (g), deductions for depreciation, taxes, general expenses, and overhead, which can not be directly attributed to any specific activity, shall be fairly apportioned between (1) the mineral extraction and the processes listed in paragraph (g) and (2) the additional activities, taking into account the ratio which the operating expenses directly attributable to the mineral extraction and the processes listed in paragraph (g) bear to the operating expenses directly attributable to the additional activities. If more than one mineral property is involved, the deductions apportioned to the mineral extraction and the processes listed in paragraph (g) shall, in turn, be fairly apportioned to the several properties, taking into account their relative production.

Petitioner and respondent are in agreement upon the "gross income from the property" as that phrase is used in the above quoted regulations. They differ on whether the $23,667.03 interest item is a deduction attributable to the mineral properties. Petitioner contends that the interest in question was in no way related to or attributable to the production of oil or the operation or development of any of its oil properties. The respondent contends that the interest was attributable to the mineral properties as a part of petitioner's overhead expenditures.

In *Mirabel Quicksilver Co.*, 41 B. T. A. 401, we held that interest on money borrowed for development and equipment expenses and amounts paid for capital stock taxes were clearly overhead expenditures which bore a direct relation to the taxpayer's mineral operations and the production therefrom, and must therefore be deducted in computing the "net income of the taxpayer * * * from the property." In *St. Marys Oil & Gas Co.*, 42 B. T. A. 270, we held that interest paid on money borrowed to purchase part of the property from which oil and gas was produced must likewise be deducted.

In *Montreal Mining Co.*, 41 B. T. A. 399, we held that the payment of silicosis claims must be placed in the same category as the development expenses involved in *Helvering* v. *Wilshire Oil Co.*, *supra*. And in *Grison Oil Corporation*, 42 B. T. A. 1117, we held that income taxes paid to the State of Oklahoma were no less attributable to the oil property upon which depletion was claimed than development expense. See also *Guanacevi Mining Co.*, 43 B. T. A. 517.

In the instant proceedings it was stipulated that petitioner also received income from other sources, such as interest, rents, dividends, and profit from sales of securities and miscellaneous items. Notwithstanding this stipulation, petitioner makes no contention that it was engaged in "activities in addition to mineral extraction" as that phrase is used in the above quoted regulations so as to bring into operation that portion of the regulations providing that "Deductions not directly attributable to particular properties or processes shall be fairly allocated." Cf. *Rocky Mountain Oil Co.*, 36 B. T. A. 365, 369; *Grison Oil Co.*, *supra*, p. 1120. Petitioner merely contends that the interest was in no way related to or attributable to the production of oil or the operation or development of any of its oil properties.

It is our opinion that the interest here involved must be regarded as an overhead expenditure. To what was it attributable? If petitioner's only business activity was that of producing and selling oil, and it seems clear that it was, then we think it would necessarily be attributable to those operations. We can not find from the evidence, nor do we understand petitioner to contend, that there were any substantial activities other than its business of producing and selling oil and other petroleum products. We, therefore, hold that the interest in question was overhead expense and attributable to the mineral properties upon which depletion is claimed, and that under the regulations above quoted it should be deducted from the "gross income from the property" in computing the "net income of the taxpayer * * * from the property" as those phrases are used in section 114 (b) (3), *supra*.

In its brief petitioner says it should be noted that the interest was not paid out of current earnings, but was paid with funds accumulated for that purpose during prior years and charged to the reserve for Federal income taxes account. We think this is not controlling. The expenditure was an allowable deduction during the taxable year, and it makes no difference out of what funds it was paid. Cf. *Helvering* v. *Wilshire Oil Co.*, *supra*.

The respondent's determination is approved.

*Decision will be entered for the respondent.*