Leon DAUBE, Plaintiff in Error,

v.

OKLAHOMA TAX COMMISSION,
Defendant in Error.

No. 36805.

Supreme Court of Oklahoma.
March 12, 1957.
Rehearing Denied May 7, 1957.

Otey, Johnson & Evans, By Geo. N. Otey, Ardmore, Looney, Watts, Ross, Looney & Nichols, Oklahoma City, for plaintiff in error.

R. F. Barry, E. J. Armstrong, and W. F. Speakman, Oklahoma City, for defendant in error.

Mac Q. Williamson, Atty. Gen., James C. Harkin, Asst. Atty. Gen., amici curiæ.

JOHNSON, Justice.

In 1948, the plaintiff in error, Leon Daube, who will hereafter be referred to as taxpayer, engaged in various business activities, including the mercantile, cattle, and oil and gas business. In connection with said year, he filed an income tax return with the Tax Commission and paid the tax shown to be due by the return. Following the filing of the return, the Tax Commission proposed the assessment of additional 1948 income taxes against him, which assessment was timely protested. It was stipulated that "irrespective of the contention made in the aforesaid protest, taxpayer at present only disputes the proposed additional assessment to the extent of $643.85, together with interest thereon at the rate of 6% per annum from March 15, 1949, until paid. This portion of the proposed additional assessment of income taxes resulted

in the Tax Commission treating Federal and State income taxes as an allowable expense and for the purpose of allocating such expense included same in overhead, thereby reducing the net income attributable to the oil and gas properties in connection with which taxpayer had claimed and taken percentage depletion."

It was further stipulated that in 1948 taxpayer and his wife paid a substantial amount as Federal income taxes, $124,526.-14, of which amount was attributable to Oklahoma income, and they also paid $567.-48 as 1944-45 Oklahoma income tax; that in the Tax Commission's "audit of the taxpayer's return for 1948, the Tax Commission took 80% of the total amount of taxes, above set out, that were paid in 1948, which amounted to $100,074.90, and for the purpose of determining the net income from the oil producing properties of the taxpayer on which to base depletion allowances only, treated such sum (it appears that consistent with community property law only one-half of this amount was in fact deducted) as a deductible expense chargeable to the oil and gas operations of the taxpayer, and for the purpose of allocating such expense included same in overhead." It was further stipulated that the Tax Commission's action in the foregoing particulars "resulted in a decrease in the amount of the depletion allowance claimed by the taxpayer in the amount of $13,137.26. This amount the Tax Commission added to taxpayer's net income, resulting in the proposed assessment of the additional taxes that taxpayer complains of, as aforesaid."

In the last paragraph of the stipulation, which paragraph immediately follows the language last above quoted, the parties stipulated as follows:

"(7) If the Commission had the right to treat the income taxes paid by the Taxpayer in 1948 as a deduction from net income from the oil properties of the Taxpayer for the purpose of determining the depletion allowance of Taxpayer and for that purpose only, as is herein set out and as is reflected

by the exhibits hereto, then said proposed assessment is proper. If not, then the Taxpayer has fully paid and discharged his 1948 liability to the State of Oklahoma."

The statutes cited and referred to herein form a part of Oklahoma's Income Tax Law and have been codified under 68 O.S. 1951.

The applicable portion of Sec. 880, which section treats with the deductions that may be taken from gross income in computing net income, reads as follows:

"In computing the net income, there shall be allowed as deductions from gross income: * * *

"(g) * * * (A)nd, provided, further, that in the case of income derived from oil and/or gas wells, * * * any taxpayer may at his option deduct as an allowance for depletion in lieu of the calculation of depletion as otherwise provided for herein, the following per centum: In the case of oil and/or gas wells, twenty per centum (20%), * * * of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed fifty per centum (50%) of the net income of the taxpayer (computed without allowance for depletion) from the property."

Subsection (g), which is in part above quoted, was enacted in 1935. See Ch. 66, Art. 6, p. 292, S.L.1935. The substance of that portion of subsection (g) which is above quoted is the same now as when originally enacted.

As we read Sec. 880(g), supra, the legislature clearly provided therein that "percentage depletion" cannot exceed 50% of the "net income" of a taxpayer from the property (lease) in connection with which percentage depletion is taken. Therefore, the basic question for determination is how should net income from a lease be determined for percentage depletion purposes.

The answer to the foregoing question is found in the income tax statutes.

The term "net income" is defined in Sec. 877(a) as follows:

"(a) The term 'net income' (except in the case of life insurance companies, as to which see Section 911 means the gross income less the deductions allowed."

As heretofore pointed out, the deductions that may be taken from gross income in computing net income are set out in Sec. 880, supra. In subsection (c) of said section, it is provided that taxes paid by a taxpayer within the taxable year are deductible in computing net income.

The Board of Tax Appeals held in Grison Oil Corp. v. Commissioner of Internal Revenue, 42 B.T.A. 1117, that in determining the percentage limitation on percentage depletion allowed under Sec. 114(b)(3), Revenue Act of 1936, 26 U.S.C.A. § 114(b)(3), amounts of income tax paid to the State of Oklahoma must be deducted in computing net income from the property in connection with which percentage depletion is taken.

In Holly Development Company v. Commissioner of Internal Revenue, 44 B.T.A. 51, the Board of Tax Appeals held that interest paid during the taxable year on a Federal income tax deficiency for prior years was deductible from gross income from oil properties in determining net income from said properties for percentage depletion purposes. The Board of Tax Appeals cites a number of cases in support of its decision.

The Supreme Court of Utah in New Park Mining Co. v. State Tax Commission, 113 Utah 410, 196 P.2d 485, 486, held that Federal income taxes must be considered in computing net income for percentage depletion purposes. Therein the Utah Court said:

"(1, 2) We have heretofore set out, the essential provisions of Section 80—13—7 and 80—13—8, U.C.A.1943, the former statute defines net income as 'gross income * * * less the deductions allowed by Section 80—13—8.'

The latter enumerates the various items to be deducted from gross income to determine net income. In making their argument plaintiffs have either overlooked or wholly ignored subsection (3) of Section 80—13—8. That subsection provides, in language which could hardly be made more clear, and certainly cannot be said to be ambiguous or uncertain, that taxes 'paid or accrued within the taxable year' are one of the items to be deducted from gross income in order to determine net income. And subsection (9) (b) provides, in terms of equal clarity, that the allowance for depletion shall be 33⅓ per cent of the net income from the property. This is determinative of the case, for even if there were an administrative interpretation such as plaintiffs assert, this court could not permit such an interpretation to stand in flat contradiction to the clear terms of the statute. Since the statute, by its express terms provides that taxes shall be deducted from gross income to determine net income, it follows that plaintiffs were not entitled to compute depletion, before deducting federal taxes * * *."

■ Taxpayer has cited no decisions sustaining his basic contention that income taxes attributable to oil and gas properties are not deductible from gross income from such properties in computing net income for percentage depletion purposes. He contends that the authorities cited herein and other authorities to the same general effect are not in point because of a 1947 amendment to Oklahoma's "Income Tax Law," which defines the terms "net income" and " 'adjusted gross income.' " Section 877 as amended in 1947, now reads:

"(a) The term 'net income' (except in the case of life insurance companies, as to which see Section 911) means the gross income less the deductions allowed.

"(b) The term 'adjusted gross income' means the gross income minus:

"(1) Trade and business deductions—The deductions allowed by Section 880, which are attributable to a trade or business carried on by the taxpayer, or to the production of income required to be included in gross income under this Act, or which are attributable to property held for productions of rents or royalties. Such deductions shall not include federal or state income taxes.

"(2) Losses—The deductions (other than those provided in paragraph (1) allowed by Section 880 as losses if incurred in trade or business or if incurred in any transaction entered into for profit, though not connected with the trade or business.

"(3) A credit for dividends as defined in Section 882(a)."

Taxpayer stresses the last sentence of subsection (b)(1), of Sec. 877, which he argues is to the effect that "such deductions shall not include federal or state income taxes." If the quoted language applied to subsection (a) of Sec. 877, subsection (a) was reenacted in the 1947 amendment under which subsection the term "net income" is defined, the argument so advanced by taxpayer would have merit, but since the language applies only to subsection (b) of Sec. 877, under which subsection the term " 'adjusted gross income' " is defined, we are unable to see where the language has any bearing on the tax problem presented by this appeal.

As heretofore pointed out, percentage depletion is by force of subsection (g) of Sec. 880 limited to 50% of the net income (not adjusted gross income) from oil property in connection with which depletion is taken, and since federal and state income taxes are deductible under the provisions of subsection (c) of Sec. 880 in computing net income, such taxes are deductible in computing net income for percentage depletion purposes. Again, if the 1947 amendment under consideration could only be explained on the hypothesis that the purpose thereof was to change the method of de-

termining net income for percentage depletion purposes, taxpayer's argument would have weight, which is not the case because one of the purposes of the amendment was unquestionably to grant Oklahoma taxpayers the right to take a standard deduction in lieu of itemizing non-business deductions. See Sec. 880(k), Title 68 Ch. 21b, p. 446, S.L.1947. In order to agree with taxpayer's contention, we would have to ignore all of the case law that has been called to our attention, and, moreover, to agree would be tantamount to holding that the legislature intended in defining the term " 'adjusted gross income' " to amend subsection (g) of Sec. 880 under which statute percentage depletion is limited to 50% of a net income from the property in connection with which depletion is taken.

The Tax Commission's authority for allocating income taxes paid in 1948 is questioned by taxpayer. The Tax Commission's action in making an allocation of said taxes accords with Holly Development Company v. Commissioner of Internal Revenue and New Park Mining Co. v. State Tax Commission, supra. The taxpayer has failed to cite authority holding that deductions cannot be allocated in determining net income for percentage depletion purposes where the taxpayer receives income from multiple businesses. If the Tax Commission's method of allocating income taxes to taxpayer's oil and gas income attributed to said income a greater amount of income taxes than properly attributable to such income, this would have been error, but taxpayer has not shown that such is the case.

Taxpayer earnestly contends that the Tax Commission treated federal and state income taxes paid in 1948 as a part of overhead for percentage depletion purposes and argues that the Tax Commission erred in doing so. As we read the stipulation of facts, the Tax Commission did not treat said taxes as a part of taxpayer's overhead, but, if the contrary be assumed, taxpayer has not shown error because he has not shown that by so treating the taxes his allowable depletion was reduced below what it would

have been had the taxes been treated and dealt with as a separate and distinct item.

However, in this connection, we believe and hold that the definition of the term "net income" set forth in 68 O.S.1951 § 877(a), to the effect that net income means gross income less the deductions allowed under the (Income Tax) Act, which deductions under 68 O.S.1951 § 880(c) of said Act include federal and state income taxes paid by a taxpayer, is applicable to the term "net income" as used in 68 O.S.1951 § 880(g) providing for depletion. Therefore, in determining "net income" for "percentage depletion purposes" under Sec. 880(g), federal and state income taxes attributable to oil or gas production and paid in the years in which percentage depletion is taken, are deductible from gross income from the properties in connection with which percentage depletion is taken.

The Supreme Court of Kansas in Producers Pipe & Supply Co. v. State Comm. of Rev. & Tax, 179 Kan. 231, 293 P.2d 1003 (see also authorities cited therein) in construing statutes identical to ours held that under a statute providing that depletion allowance for income tax purposes shall not exceed 50% of the " 'net income of the taxpayer (computed without allowance for depletion) from the property,' " quoted phrase refers to what is left after every allowable deductible item, including federal taxes, except depletion, is deductible from gross income.

The Kansas statute, 79–3213, G.S.1949, construed by the Kansas Court in the above case provides:

"(1) In the case of oil and gas wells, the allowance for depletion under section 79–3206(a) (11) of the General Statutes Supplement of 1943 shall be 27½ percent of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 percent of the net

income of the taxpayer (computed without allowance for depletion) from the property, * * *."

A comparison of our statute, 68 O.S. 1951 § 880(g), hereinbefore quoted, with the Kansas Statute, 79–3213, G.S.Kan.1949, supra, leaves no doubt but that the applicable rules of construction as applied in the Kansas case, supra, may well be applied herein. The Kansas Court, 179 Kan. 231, 293 P.2d 1003, supra, in the first paragraph of the syllabus said:

"The words 'net income of the taxpayer (computed without allowance for depletion) from the property' as used in G.S.1949, 79–3213(c)(1), providing that allowance for depletion of oil and gas wells shall not exceed 50 percent of the taxpayer's net income without allowance for depletion, mean what is left after every allowable deductible item (including federal income taxes), except depletion, is deducted from gross income."

And in the body of the opinion, it is said:

"We have no difficulty in concluding that, limited to the manner and method of computing income of the taxpayer and from the property for the purpose of limiting percentage depletion; the only reasonable construction to be given the provisions of 79–3213(c)(1) is that net income of the taxpayer, computed without allowance for depletion, means what is left after every allowable deductible item (including federal taxes), except depletion, is deducted from gross income. The result, since the language of the statute is so clear as to preclude other interpretation, and there is no showing appellee's allocation of federal income tax attributable to appellant's properties in Kansas was unreasonable, arbitrary or capricious, is that appellee's position regarding the matter here in controversy must be upheld and the trial court's judgment with respect thereto should be affirmed." ·

In the concluding portion of the opinion, the Kansas Court used language apropos herein. Therein it was stated:

"Nor do we feel called upon to detail and discuss the numerous arguments advanced by appellant to the effect that the appellee's, and what we have just held to be our own, construction of the involved provisions of G.S.1949, 79–3213(c)(1) has resulted, and in the future will result, in placing a heavy burden on reporting taxpayers in the preparation of their returns and may produce unequal results as to some, particularly those making their tax returns, as it does, on an accrual basis. However, we do feel impelled to state that, in the main, the short and overall answer to all such arguments, as are worthy of note, is to be found in 27 Am. Jur., Income Taxes, 378 § 125, where it is said that 'since the allowance of a depletion deduction is an act of legislative grace, it is immaterial that the provision for percentage depletion may produce unequal results.' This, it is to be noted, is just another way of saying that in the absence of its unreasonable, arbitrary or capricious administration a taxpayer, if he desires to take advantage of its terms, must accept the burdens as well as the benefits of an act of legislative grace such as is here involved."

For the reasons given herein, the order of the Tax Commission is affirmed.

WELCH, C. J., CORN, V. C. J., and JACKSON and CARLILE, JJ., concur.

DAVISON and BLACKBIRD, JJ., concur in result.

HALLEY and WILLIAMS, JJ., dissent.

HALLEY, Justice (dissenting).

To me the majority opinion distorts the plain wording of the State's Income Tax Law. The provisions that are the seat of the argument in this case were contained

in House Bill No. 29 of the 1947 Legislature of Oklahoma. These provisions are not five paragraphs apart in the Act. One defines " 'adjusted gross income.' " The other provides what deductions shall be allowed as deductions from gross income when computing net income. It is plain to me that when determining " 'adjusted gross income' ", trade and business deductions must be deducted from the gross income and such trade and business deductions shall not include Federal and State Income Taxes. The facts in the case at bar offer a perfect example of the practical operations of the Act. The taxpayer here was engaged in the production of oil. He was told in estimating his trade and business deductions in the operations of the oil wells he must not include as a deduction Federal and State Income Taxes. He did as the Act directed. Any other interpretation would clearly violate the provisions of the Act.

The cases cited by the majority are from jurisdictions that do not have our statutory provisions and are not in point.

I dissent.

I am authorized to state that Justice WILLIAMS concurs in these views.